[Cite as *In re W.J.*, 2022-Ohio-2449.]

## IN THE COURT OF APPEALS OF OHIO
### THIRD APPELLATE DISTRICT
### LOGAN COUNTY

IN RE:

    W.J.,

CASE NO. 8-21-29

AN ADJUDICATED ABUSED AND
NEGLECTED CHILD.

[WILLIAM J. - APPELLANT]
[STEPHANIE L. - APPELLANT]

O P I N I O N

Appeals from Logan County Common Pleas Court
Family Court Division
Trial Court No. 20 CS 0034

**Judgment Affirmed**

**Date of Decision: July 18, 2022**

**APPEARANCES:**

    *Christopher L. Trolinger* **for Appellant William J.**

    *Royce A. Link* **for Appellant Stephanie L.**

    *Evan R. Downing* **for Appellee**

Case No. 8-21-29

**ZIMMERMAN, P.J.**

**{¶1}** Mother-appellant, Stephanie L. ("Stephanie"), and father-appellant, William J. ("William"), appeal the February 4, 2021 decision of the Logan County Court of Common Pleas, Family Court Division, granting permanent custody of their minor child, W.J., to the Logan County Job and Family Services (the "agency"). For the reasons that follow, we affirm.

**{¶2}** This case commenced following the arrest of Stephanie and William for public intoxication after they were found unresponsive in their vehicle, along with their child, W.J., by the City of Myrtle Beach Police Department on June 17, 2019. W.J., born in 2012, is the minor child of Stephanie and William, an unmarried couple who have been in a relationship for approximately 14 years. On June 20, 2019, the South Carolina Department of Social Services ("SCDSS") filed a complaint alleging W.J. to be an abused and neglected child. Following a hearing on November 12, 2019, the Family Court for the Fifteenth Judicial Circuit ("South Carolina Family Court") adjudicated W.J. an abused and neglected child and granted legal custody of W.J. to the SCDSS on February 4, 2020.[1]

---

[1] Stephanie was initially represented by counsel until her counsel was permitted to withdraw from the representation on July 18, 2019. The record reflects that Stephanie did not retain counsel until April 19, 2021. William was initially appointed counsel but later retained counsel and was represented by retained counsel at the November 12, 2019 dispositional hearing.

{¶3} Shortly after W.J. was adjudicated an abused and neglected child, he was sent to live with his adult brother and sister-in-law in Ohio under the Interstate Compact for the Placement of Children. On January 31, 2020, Stephanie and William consented to transfer the case to Ohio after representing to the South Carolina Family Court that William "is a resident and citizen of Ohio" and that Stephanie "is a citizen and resident of South Carolina but visits Ohio to visit with her child." (Doc. No. 1). Based on that representation and the consent of the parties, the South Carolina Family Court ordered that the case be transferred to Ohio on April 22, 2020. However, based on William's petition to the Logan County Court of Common Pleas, Family Court Division, the case was transferred to the trial court on June 11, 2020.

{¶4} Importantly, before the case was transferred to the trial court, the South Carolina Family court conducted a "permanency planning hearing" during which the court found that the SCDSS "made reasonable efforts to assist [Stephanie and William] in remedying the causes of [W.J.'s] placement or retention in foster care" and concluded that W.J. should remain in the temporary custody of the SCDSS. (*Id.*).

{¶5} After the case was transferred to the trial court, William filed a motion for extended parenting time on June 17, 2020. As a result, the trial court appointed W.J. a Guardian Ad Litem ("GAL") on June 30, 2020. The GAL filed a report in

the trial court on July 30, 2020 recommending visitation between W.J. and William but "no in person visitation between [W.J.] and [Stephanie] until [she] engages in the case plan services with The Agency." (Doc. No. 23). In spite of that, the GAL filed an amended report in the trial court on August 26, 2020 recommending that any visitation between William and W.J. should be supervised by law enforcement and occur only at the agency. Consequently, the trial court denied William's motion for extended parenting time on September 10, 2020 and ordered William supervised parenting time with W.J. with law enforcement present at the agency. Nevertheless, on September 21, 2020, William filed a motion for "extra" visitation "to make up for the visitation that was missed on September 16, 2020." (Doc. No. 42).

{¶6} Throughout the pendency of the case, the trial court approved the agency's case plans, after such were submitted to the trial court. Notably, the August 4, September 1, and September 3 2020 case plans reflect that Stephanie did not want to be a part of the case, the case plan, or to be contacted by the agency. Regardless, when Stephanie requested that the agency add her to the case plan, the agency filed an amended case plan on October 29, 2020. Nevertheless, the agency filed an amended case plan on December 8, 2020 after Stephanie requested that she be removed from the case plan. Ultimately, the agency filed an amended case plan on March 9, 2021 requesting that "there be no contact between Stephanie and

[W.J.]" "[s]ince Stephanie declined to continue [sic] to be a participant in the case plan." (Doc. No. 106).

{¶7} On July 30, 2020, William filed an objection to the agency's proposed case plan; however, after a hearing on September 1, 2020, the trial court determined on September 10, 2020 "that it is in the best interest of [W.J.] to order the case plans as submitted and order that [William] sign the releases of information to verify compliance with the case plans." (Doc. No. 40). Thereafter, on September 21, 2020, William filed a motion requesting that the trial court "amend the case plan to remove any requirement that all communication regarding the case that needs to occur between the case worker and [William] must go through his counsel." (Doc. No. 43).

{¶8} William sought his own psychological assessment in March 2020, which he provided to the agency. However, on November 20, 2020, the agency filed a motion objecting to the psychological assessment that it was provided by William.

{¶9} The GAL filed a third report on October 22, 2020 reflecting that W.J. "enjoys visits with his father and would like to see his father more often" and recommending that the trial court grant William's September 21, 2020 motion requesting the "extra" parenting time; however, the GAL recommended that the trial

court deny William's motion to amend the case plan to remove any requirement that communication be directed through his counsel. (Doc. No. 54).

{¶10} On November 25, 2020, the GAL filed his fourth report in which he documented that W.J. "has consistently stated that he wants more visitation with his father and that he wants to be returned to his father." (Doc. No. 71). Nevertheless, based on the continuing concerns with William's conduct, the GAL recommended that the trial court continue the temporary-custody disposition to the agency and continue supervised visits at the agency (with law enforcement present) between William and W.J. Importantly, the GAL filed his fifth report on December 15, 2020 in which the GAL documented that W.J. "stated that he does not want to live with his mother and father again." (Doc. No. 83).

{¶11} William filed motions for custody of W.J. on November 24 and 30, 2020. After hearings on December 2 and 21, 2020 (and an in camera interview of W.J. on February 2, 2021), the trial court ordered on February 19, 2021 that W.J. remain in the temporary custody of the agency and determined under R.C. 2151.419 that the agency made reasonable efforts to prevent the continued removal of W.J. from his home. The agency filed its semi-annual administrative reviews on January 13 and June 29, 2021.

{¶12} On March 12, 2021, the agency filed a motion for permanent custody of W.J. under R.C. 2151.413(D)(1) and 2151.414(B)(1)(d). On March 24, 2021,

Stephanie, pro se, and William, pro se, filed motions, respectively, "objecting" to the agency's motion for permanent custody. That same day, Stephanie, pro se, and William, pro se and represented by counsel, filed motions, respectively, requesting that the trial court prohibit W.J. travel to Florida, which the trial court denied.

{¶13} After Stephanie appeared in the case, she objected on May 11, 2021 to the agency's case plan terminating visitation between her and W.J. Even though Stephanie failed to participate in the case plan prior to the agency's motion for permanent custody, the agency proposed (and the trial court ordered) virtual visitation between her and W.J.

{¶14} Following an April 5, 2021 GAL interview during which W.J. "stated that he wanted to be returned to his parents," the GAL filed a notice of potential conflict with the trial court and the trial court appointed W.J. counsel on April 20, 2021. Notwithstanding W.J.'s stated preference "that he wants to live with [William] and that he does not want to be adopted," the GAL recommended that the trial court grant permanent custody of W.J. to the agency in his May 10, 2021 report. (Doc. No. 153). Moreover, the GAL's May 10, 2021 report reflects that William was arrested on felony charges in February 2021.

{¶15} On May 3, 2021, William filed a motion for legal custody of W.J. under R.C. 2151.353(A)(3) and 2151.42(A).

{¶16} After a hearing on May 17-18, 2021, the trial court granted permanent custody of W.J. to the agency on August 11, 2021. (Doc. No. 174).

{¶17} Stephanie filed her notice of appeal on August 26, 2021 and William filed his notice of appeal on August 30, 2021. The trial court granted the motions of the parties requesting that it stay its order granting permanent custody of W.J. to the agency pending the outcome of this appeal.

{¶18} Stephanie raises seven assignments of error, while William raises three assignments of error. For ease of our discussion, because it raises a jurisdictional argument, we will begin by addressing Stephanie's second assignment of error, followed by Stephanie's third assignment of error, then Stephanie's first, fourth, and fifth assignments of error together, along with William's assignments of error. Thereafter, we will address Stephanie's sixth assignment of error, followed by Stephanie's seventh assignment of error.

### Mother's Assignment of Error No. II

**The Trial Court Committed Reversible Error By Accepting Jurisdiction of the Case From the South Carolina Family Court.**

{¶19} Stephanie argues in her second assignment of error that the trial court erred by accepting jurisdiction of the case. In other words, Stephanie contends that the trial court lacked subject-matter jurisdiction over the case because "[t]he evidence in the case ultimately showed that the parties to the case were residing in

South Carolina at the time of the removal of the minor child, and continued to reside in South Carolina during the initial phases of the case." (Stephanie's Brief at 15).

*Standard of Review*

{¶20} Generally, "[a]n appellate court conducts a de novo review of a trial court's determination regarding the existence of subject matter jurisdiction, whether the trial court has or lacks jurisdiction in the first place, because such determination is a matter of law." *Plaza v. Kind*, 3d Dist. Auglaize No. 2-18-05, 2018-Ohio-5215, ¶ 20. "De novo review is independent and without deference to the trial court's determination." *ISHA, Inc. v. Risser*, 3d Dist. Allen No. 1-12-47, 2013-Ohio-2149, ¶ 25, citing *Costner Consulting Co. v. U.S. Bancorp*, 195 Ohio App.3d 477, 2011-Ohio-3822, ¶ 10 (10th Dist.).

{¶21} However, even though "a de novo standard of review is applied when determining the issue of the trial court's subject matter jurisdiction, once the subject matter jurisdiction is established, a trial court's decision as to whether to exercise its jurisdiction pursuant to the [Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA")] should only be reversed if the court committed an abuse of discretion." *Martindale v. Martindale*, 4th Dist. Athens No. 14CA30, 2016-Ohio-524, ¶ 35. *See also* R.C. 3127.21 (granting Ohio courts the discretion to decline jurisdiction when the court determines that a court of another state is a more

convenient forum). An abuse of discretion suggests the trial court's decision is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

*Analysis*

{¶22} "Subject-matter jurisdiction is the power of a court to entertain and adjudicate a particular class of cases." *Bank of Am., N.A. v. Kuchta*, 141 Ohio St.3d 75, 2014-Ohio-4275, ¶ 19. *See also In re R.M.*, 4th Dist. Athens No. 12CA43, 2013-Ohio-3588, ¶ 77. "'Because subject-matter jurisdiction goes to the power of the court to adjudicate the merits of a case, it can never be waived and may be challenged at any time.'" *In re R.M.* at ¶ 77, quoting *Pratts v. Hurley*, 102 Ohio St.3d 81, 2004-Ohio-1980, ¶ 11.

{¶23} "R.C. 2151.23(A)(2) provides that the juvenile court has exclusive original jurisdiction to determine custody of a child who is not a ward of a court of this state." *Id.* at ¶ 78. "R.C. 2151.23(F)(1) further provides, however, that a juvenile court must exercise that jurisdiction in accordance with R.C. Chapter 3127," the UCCJEA. *Id.*, citing *Rosen v. Celebrezze*, 117 Ohio St.3d 241, 2008-Ohio-853, ¶ 46 (explaining that, even though Ohio's statutory scheme provides a juvenile court with "basic statutory jurisdiction to determine custody matters[,] a more specific statute like R.C. 3127.15 [may] patently and unambiguously divest[ ] the court of such jurisdiction").

**{¶24}** "The UCCJEA defines a trial court's subject-matter jurisdiction to issue a child custody determination." *Id.* at ¶ 79, citing *Rosen* at ¶ 44 (stating that erroneous exercise of jurisdiction under the UCCJEA "is not a mere error in the exercise of jurisdiction; it is a defect in the Ohio court's subject-matter jurisdiction"). "Thus, claimed errors in exercising jurisdiction under the UCCJEA 'cannot be waived.'" *Id.*, quoting *Rosen* at ¶ 45.

**{¶25}** R.C. 3127.15(A) sets forth "the exclusive jurisdictional basis for making a child custody determination by a court of this state." R.C. 3127.15(B). The statute provides, in its relevant part, as follows:

> (A)  Except as otherwise provided in section 3127.18 of the Revised Code, a court of this state has jurisdiction to make an initial determination in a child custody proceeding only if one of the following applies:
>
> (1)  This state is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state.
>
> (2)  A court of another state does not have jurisdiction under division (A)(1) of this section or a court of the home state of the child has declined to exercise jurisdiction on the basis that this state is the more appropriate forum under section 3127.21 or 3127.22 of the Revised Code, or a similar statute of the other state, and both of the following are the case:
>
> > (a)  The child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this state other than mere physical presence.

(b)   Substantial evidence is available in this state concerning the child's care, protection, training, and personal relationships.

(3)   All courts having jurisdiction under division (A)(1) or (2) of this section have declined to exercise jurisdiction on the ground that a court of this state is the more appropriate forum to determine the custody of the child under section 3127.21 or 3127.22 of the Revised Code or a similar statute enacted by another state.

(4)   No court of any other state would have jurisdiction under the criteria specified in division (A)(1), (2), or (3) of this section.

R.C. 3127.15(A).[2]

{¶26} "R.C. 3127.15(A) thus provides a court with four types of jurisdiction to make the initial determination in a child custody proceeding: (1) home-state jurisdiction, (2) significant-connection jurisdiction, (3) jurisdiction because of declination of jurisdiction, and (4) default jurisdiction." *In re R.M.* at ¶ 81, citing *Rosen* at ¶ 31.  "The primary purpose of the UCCJEA is '"to avoid jurisdictional competition and conflict with courts of other jurisdictions" in custody matters.'" *Plaza* at ¶ 17, quoting *Rosen* at ¶ 20, quoting *In re Palmer*, 12 Ohio St.3d 194, 196 (1984).  Therefore, the home state is given jurisdictional priority and exclusive continuing jurisdiction under the UCCJEA.  *In re R.M.* at ¶ 81.

{¶27} Based on our review of the record, we conclude that the trial court had subject-matter jurisdiction over the case.  That is, there is no dispute that the parties

---

[2] A "'[c]hild custody proceeding' means a proceeding in which legal custody, physical custody, parenting time, or visitation with respect to a child is an issue.  [It] may include a proceeding for * * * neglect, abuse, [or] dependency * * * ."  R.C. 3127.01(A)(3).

consented to the South Carolina Family Court's decision "relinquish[ing] jurisdiction and agree[ing] to transfer the * * * case to Ohio's court [sic] and place control of the case with Ohio Child Protective Services." (Doc. No. 1). In other words, the trial court obtained subject-matter jurisdiction over the case by virtue of R.C. 3127.15(A)(3). *See State ex rel. M.L. v. O'Malley*, 144 Ohio St.3d 553, 2015-Ohio-4855, ¶ 16. Therefore, we need not address any home-state arguments raised by Stephanie.

{¶28} Moreover, the trial court did not abuse its discretion by electing to exercise its jurisdiction under the UCCJEA.

> Forum non conveniens disputes in child custody [proceedings] are statutorily governed by the UCCJEA [under] R.C. 3127.21 which states as follows:
>
> "(A) A court of this state that has jurisdiction under this chapter to make a child custody determination may decline to exercise its jurisdiction at any time if it determines that it is an inconvenient forum under the circumstances and that a court of another state is a more convenient forum. The issue of inconvenient forum may be raised upon motion of a party, the court's own motion, or at the request of another court.
>
> (A) Before determining whether it is an inconvenient forum, a court of this state shall consider whether it is appropriate for a court of another state to exercise jurisdiction. For this purpose, the court shall allow the parties to submit information and shall consider all relevant factors, including the following:
>
> > (1) Whether domestic violence has occurred and is likely to continue in the future and which state could best protect the parties and the child;

(2)  The length of time the child has resided outside this state;

(3)  The distance between the court in this state and the court in the state that would assume jurisdiction;

(4)  The relative financial circumstances of the parties;

(5)  Any agreement of the parties as to which state should assume jurisdiction;

(6)  The nature and location of the evidence required to resolve the pending litigation, including the testimony of the child;

(7)  The ability of the court of each state to decide the issue expeditiously and the procedures necessary to present the evidence;

(8)  The familiarity of the court of each state with the facts and issues in the pending litigation.

(B)  If a court of this state determines that it is an inconvenient forum and that a court of another state is a more appropriate forum, it shall stay the proceedings upon condition that a child custody proceeding be promptly commenced in another designated state and may impose any other condition the court considers just and proper.

(C)  A court of this state may decline to exercise its jurisdiction under this chapter if a child custody determination is incidental to an action for divorce or another proceeding while still retaining jurisdiction over the divorce or other proceeding."

*Martindale* 2016-Ohio-524, at ¶ 36, quoting R.C. 3127.21.

{¶29} Generally, "a court acts within its discretion when it weighs the factors." *In re A.O.*, 6th Dist. Ottawa No. OT-20-020, 2021-Ohio-880, ¶ 13. "[I]n the absence of evidence to the contrary, a reviewing court will presume that a trial court considered the statutory factors." *Id.* "Where a trial court never mentions the

statute in its judgment entry, such 'is concerning' to a reviewing court, but it 'is by no means dispositive.'" *Id.*, quoting *Simon v. Simon*, 9th Dist. Summit No. 25933, 2012-Ohio-3443, ¶ 9. "Finally, where the statutory factors give little guidance, a court acts within its discretion by relying on other relevant factors." *Id.*

{¶30} Here, the trial court accepted jurisdiction of the case "[b]ased on the representation set forth in the [South Carolina Family Court] Order * * * ." (Doc. No. 3). Even though the trial court addressed only one of the statutory factors—the fifth factor—we cannot say that the trial court abused its discretion by electing to exercise its discretion over the case based on the unequivocal written agreement of the parties that the trial court should assume jurisdiction of the case. That is, "under the invited error doctrine, a party may not take advantage of an error that he invited or induced the trial court to make." *In re R.P.*, 6th Dist. Lucas No. L-17-1267, 2018-Ohio-885, ¶ 42. In this case, any purported error was invited by the parties written agreement that the trial court should assume jurisdiction of the case. Importantly, Stephanie concedes in her brief that she stipulated to the trial court assuming jurisdiction over the case. (Stephanie's Brief at 8). Consequently, Stephanie may not claim error in the trial court's failure to address the remaining R.C. 3127.21 factors.

{¶31} For these reasons, we conclude that the trial court did not abuse its discretion by electing to exercise its jurisdiction under the UCCJEA.

**{¶32}** Stephanie's first assignment of error is overruled.

**Mother's Assignment of Error No. III**

**The Trial Court Erred By Failing to Inquire or Appoint Counsel For Appellant After the Transfer of Jurisdiction to Ohio.**

**{¶33}** In her third assignment of error, Stephanie argues that the trial court erred by failing to appoint trial counsel to represent her after accepting jurisdiction of the case.

*Standard of Review*

**{¶34}** "'Juv. R. 4(A) and R.C. 2151.352 * * * provide parents who are parties to juvenile proceedings with the right to be represented by counsel at all stages of juvenile proceedings.'" *In re M.M.*, 11th Dist. Ashtabula No. 2021-A-0020, 2022-Ohio-579, ¶ 12, quoting *In Re Lander*, 12th Dist. Butler No. CA99-05-096, 2000 WL 819775, *2 (June 26, 2000). *See also In re R.K.*, 152 Ohio St.3d 316, 2018-Ohio-23, syllabus. "However, the right to counsel in permanent-custody proceedings is not absolute. A parent can waive his or her right to counsel." *In re J/B Children*, 1st Dist. Hamilton No. C-190651, 2020-Ohio-1085, ¶ 17. *See also In re H. Children*, 1st Dist. Hamilton No. C-190630, 2020-Ohio-774, ¶ 24 (noting that "'there are differences between criminal cases in which "the litigant may lose his physical liberty if he loses * * * " and cases involving the termination of parental rights'" where "[a] parent can waive the right to counsel in a parental termination

-16-

action"), quoting *In re W.W.E.*, 10th Dist. Franklin No. 15AP-167, 2016-Ohio-4552, ¶ 38, quoting *Lassiter v. Dept. of Social Servs.*, 452 U.S. 18, 25, 101 S.Ct. 2153 (1981). "[W]hen reviewing a waiver of the right to counsel in the context of a permanent termination of parental rights, courts in Ohio have examined whether the waiver was knowingly, intelligently, and voluntarily made." *In re W.W.E.* at ¶ 36. *See also In re Moore*, 153 Ohio App.3d 641, 2003-Ohio-4250, ¶ 20 (3d Dist.).

**{¶35}** In the criminal context, appellate courts review de novo whether the waiver of the right to counsel was knowing, voluntary, and intelligent. *See State v. Beightler*, 3d Dist. Hardin No. 6-18-11, 2019-Ohio-4522, ¶ 23. Because it presents an issue of law, we will apply that standard of review here. *See Walker v. Walker*, 3d Dist. Marion No. 9-12-15, 2013-Ohio-1496, ¶ 29. De novo review is an independent review without deference to the trial court. *See Ohio Bell Tel. Co. v. Pub. Util. Comm. of Ohio*, 64 Ohio St.3d 145, 147 (1992).

**{¶36}** However, in a parental-termination action, this court has reviewed a trial court's decision on whether to appoint substitute counsel for an abuse of discretion. *Accord In re Moore* at ¶ 20. Again, for this court to conclude that the trial court abused its discretion, we must conclude that the trial court's decision is unreasonable, arbitrary, or unconscionable. *Blakemore*, 5 Ohio St.3d at 219.

*Analysis*

**{¶37}** "[A] parent's waiver of the right to counsel in a parental termination proceeding may be inferred where 'the total circumstances of the individual case, including the background, experience and conduct of the parent' indicate that the parent has waived the right to counsel." *In re H. Children*, 2020-Ohio-774, at ¶ 25, citing *In re M. Children*, 1st Dist. Hamilton No. C-180564, 2019-Ohio-484, ¶ 15, *In re W.W.E.*, 2016-Ohio-4552, at ¶ 39, *In re A.S.*, 8th Dist. Cuyahoga Nos. 94098 and 94104, 2010-Ohio-1441, ¶ 27, and *In re Rachal G.*, 6th Dist. Lucas No. L-02-1306, 2003-Ohio-1041, ¶ 14. "Inferred waivers have been found in circumstances where a parent has repeatedly failed to communicate with counsel or attend scheduled hearings." *Id.*, citing *In re M. Children* at ¶ 15 and *In re A.S.* at ¶ 30.

**{¶38}** In this case, Stephanie was appointed trial counsel by the South Carolina Family Court on June 20, 2019 but her appointed trial counsel was permitted to withdraw from the representation on July 18, 2019 after Stephanie represented to the court that there was a "a breakdown of the attorney client relationship and [she] wanted to retain private counsel." (Doc. No. 1).

**{¶39}** However, Stephanie failed to provide a transcript of the proceedings during which her appointed trial counsel was permitted to withdraw from the representation or a suitable alternative to a transcript. "Under App.R. 9, an appellant must submit to the appellate court a transcript of the trial court proceedings they

-18-

deem necessary for the appellate court's review." *Tretola v. Tretola*, 3d Dist. Logan No. 8-14-12, 2014-Ohio-5484, ¶ 83. "[I]f no transcript is available, App.R. 9(C) and (D) provide alternatives for the appellant." *Id.*

**{¶40}** "[W]here there is no transcript submitted on appeal, '[t]here is a presumption that the trial court proceedings were validly conducted. Absent a complete transcript or an acceptable alternative (such as is described in App.R. 9(C)), we must presume that the trial court's decision is correct.'" *Barksdale v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. Franklin No. 16AP-297, 2017-Ohio-395, ¶ 17, quoting *Jenkins v. State Farm Mut. Auto. Ins. Co.*, 10th Dist. No. 11AP-1074, 2013-Ohio-1142, ¶ 30. *See also Spinner v. Barger*, 3d Dist. Shelby No. 17-16-27, 2017-Ohio-1489, ¶ 9 ("""When portions of the transcript necessary for resolution of assigned errors are omitted from the record, the reviewing court has nothing to pass upon and thus, as to those assigned errors, the court has no choice but to presume the validity of the lower court's proceedings, and affirm."""), quoting *Hayward v. Bellmann*, 6th Dist. Williams No. WM-09-007, 2010-Ohio-3438, ¶ 40, quoting *Knapp v. Edwards Laboratories*, 61 Ohio St.2d 197, 199 (1980). "Furthermore, where an appellant fails to provide the court with a transcript of the trial court proceedings, despite the fact that he contends that certain of the trial court's finding of fact were improper, a court has nothing to review without a transcript and must presume that the findings of fact are correct and supported by the evidence."

*Barksdale* at ¶ 17. Consequently, we must presume that Stephanie's waiver of her right to counsel was knowing, voluntary, and intelligent.

**{¶41}** Moreover, based on the total circumstances of this case, Stephanie waived her right to counsel and there is no evidence in the record before us that the trial court acted unreasonably, arbitrarily, or unconscionably by failing to appoint substitute counsel for Stephanie. Indeed, following the transfer of the case to the trial court on April 22, 2020, Stephanie never appeared in the case before the trial court until March 24, 2021. Importantly, there is no evidence in the record reflecting that Stephanie filed an affidavit of indigency with the trial court demonstrating that she qualified for court-appointed counsel. *Accord In re S.L.*, 3d Dist. Defiance No. 4-10-09, 2010-Ohio-6380, ¶ 63 (noting that "there is nothing in the record to indicate that Crystal filed an affidavit of indigency in order to have the court appoint an attorney for her").

**{¶42}** Rather, the record reflects that Stephanie voluntarily chose not to participate in the case until the agency filed its motion for permanent custody on March 12, 2021. *See id* at ¶ 64 (concluding that "the record does not demonstrate that Crystal was denied her right to counsel prior to the motions for permanent custody but that she did not pursue it"). Thereafter, Stephanie appeared pro se on March 24, 2021 and retained private counsel on April 19, 2021. *See In re Moore*, 153 Ohio App.3d 641, 2003-Ohio-4250, at ¶ 21 (concluding that "the trial court did

not abuse its discretion in failing to appoint substitute counsel [because] none was ever requested").

{¶43} Thus, based on the totality of the circumstances, the evidence reflects that Stephanie waived her right to counsel. Therefore, we conclude that the trial court did not abuse its discretion by failing to appoint substitute counsel for Stephanie.

{¶44} Stephanie's second assignment of error is overruled.

### Mother's Assignment of Error No. I

**The Trial Court Violated Appellant's Constitutional Right to Due Process and Equal Protection Under the Law Based Upon Covid-19 Impeding the Case.**

### Mother's Assignment of Error No. IV

**The Trial Court Erred By Allowing Two Caseworkers To Testify Via Webex Without An Agreement of the [sic] or a Finding That it Would Sufficiently Guarantee the Integrity of the Proceedings And the Parties' Interests And Rights.**

### Mother's Assignment of Error No. V.

**The Trial Court's Decision Was Against the Manifest Weight of the Evidence Because the Evidence Did Not Support a Finding That the Termination of the Parental Rights of Mother Was in the Child's Best Interest.**

### Father's Assignment of Error No. I

**The Trial Court's Granting Permanent Custody Was Against the Manifest Weight of the Evidence, Was an Abuse of Discretion And Contrary to Law As There Was Insufficient Evidence to Satisfy the Findings By Clear and Convincing Evidence That**

**Such Permanent Custody to the Agency Was in the Child's Best Interest.**

**Father's Assignment of Error No. II**

**The Trial Court Erred in Finding and Considering R.C. 2151.414(E)(7) to (11) Factors As Such Was Stipulated That None of Those Factors Were Being Pursued By the Appellee And None Existed.**

**Father's Assignment of Error No. III**

**The Trial Court Erred And Abused its Discretion in Finding That All of the Factors in R.C. 2151.414(D)(2) Were Satisfied And That the Court Was Required to Grant the Motion For Permanent Custody As Such Was Against the Manifest Weight of the Evidence And Not Alleged By the Agency And the Court Failed to Identify Upon Which of the Factors the Court Relied.**

**{¶45}** In her first, fourth, and fifth assignments of error, and in his assignments of error, Stephanie and William argue that the trial court erred by granting permanent custody of W.J. to the agency. Specifically, Stephanie argues under her first assignment of error that the trial court erroneously concluded that W.J. had been in the temporary custody of a public-children-services agency for 12 or more months of a consecutive 22-month period because of the Covid-19 emergency.

**{¶46}** Further, Stephanie argues under her fifth assignment of error and William argues under his assignments of error that the trial court's decision granting permanent custody of W.J. to the agency is against the manifest weight of the

-22-

evidence because clear and convincing evidence does not support the trial court's best-interest findings.

{¶47} In her fourth assignment of error, Stephanie argues that the trial court erred by permitting the South Carolina caseworkers to testify virtually through the use of WebEx technology.

*Standard of Review*

{¶48} The right to raise one's child is a basic and essential right. *In re Murray*, 52 Ohio St.3d 155, 157 (1990), citing *Stanley v. Illinois*, 405 U.S. 645, 651, 92 S.Ct. 1208 (1972) and *Meyer v. Nebraska*, 262 U.S. 390, 399, 43 S.Ct. 625 (1923). "Parents have a 'fundamental liberty interest' in the care, custody, and management of the child." *Id.*, quoting *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S.Ct. 1388 (1982). However, the rights and interests of a natural parent are not absolute. *In re Thomas*, 3d Dist. Hancock No. 5-03-08, 2003-Ohio-5885, ¶ 7. These rights may be terminated under appropriate circumstances and when the trial court has met all due process requirements. *In re Leveck*, 3d Dist. Hancock Nos. 5-02-52, 5-02-53, and 5-02-54, 2003-Ohio-1269, ¶ 6.

{¶49} When considering a motion for permanent custody of a child, the trial court must comply with the statutory requirements set forth in R.C. 2151.414. *See In re C.E.*, 3d Dist. Hancock Nos. 5-09-02 and 5-09-03, 2009-Ohio-6027, ¶ 14. R.C. 2151.414(B)(1) establishes a two-part test for courts to apply when determining

Case No. 8-21-29

whether to grant a motion for permanent custody: (1) the trial court must find that one of the circumstances in R.C. 2151.414(B)(1)(a)-(e) applies, and (2) the trial court must find that permanent custody is in the best interest of the child. *In re S.G.*, 9th Dist. Wayne No. 15AP0005, 2015-Ohio-2306, ¶ 10. *See also In re Brown*, 98 Ohio App.3d 337, 343 (3d Dist.1994). R.C. 2151.414(B)(1) provides, in relevant part, that a trial court

> may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:
>
> (a) The child is not abandoned or orphaned, * * * has not been in the temporary custody of one or more public children services agencies * * * for twelve or more months of a consecutive twenty-two-month period if, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
>
> * * *
>
> (d) [T]he child has been in the temporary custody of one or more public children services agencies * * * for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state.

R.C. 2151.414(B)(1)(a), (d). *See also In re A.W.*, 9th Dist. Lorain No. 17CA011123, 2017-Ohio-7786, ¶ 17 (noting "that the five factors listed in R.C.

-24-

2151.414(B)(1)(a)-(e) are alternative findings, and that the agency need only prove one in order to satisfy the first prong of the permanent custody test").

**{¶50}** "If the trial court determines that *any* provision enumerated in R.C. 2151.414(B)(1) applies, the trial court must determine, by clear and convincing evidence, whether granting the agency permanent custody of the child is in the child's best interest." (Emphasis sic.) *In re A.F.*, 3d Dist. Marion No. 9-11-27, 2012-Ohio-1137, ¶ 55.

**{¶51}** "In determining the best interest of a child, a juvenile court 'may apply one of two different tests.'" *In re S.C.*, 10th Dist. Franklin No. 21AP-203, 2022-Ohio-356, ¶ 38, quoting *In re J.P.*, 10th Dist. No. 18AP-834, 2019-Ohio-1619, ¶ 39. "'Under R.C. 2151.414(D)(1), the juvenile court weighs multiple factors * * * to decide whether granting an agency permanent custody of a child is in that child's best interest.'" *Id.*, quoting *In re J.P.* at ¶ 39. "By contrast, 'under R.C. 2151.414(D)(2), if the juvenile court makes [each of] the four enumerated findings, permanent custody is per se in the child's best interest and the court "shall" commit the child to the permanent custody of the agency.'" *Id.*, quoting *In re J.P.* at ¶ 39. "These two provisions 'are *alternative* means for reaching the best-interest determination,' and '[w]here a juvenile court employs the R.C. 2151.414(D)(1) [multiple factor weighing] method of determining the child's best interest, the court

need not also conduct the R.C. 2151.414(D)(2) [four-requisite prong] analysis.'"

(Emphasis added.) *Id.*, quoting *In re J.P.* at ¶ 40.

**{¶52}** In determining whether granting the agency permanent custody is in

the best interest of the child, R.C. 2151.414(D)(1) provides:

> [T]he court shall consider all relevant factors, including, but not limited to, the following:
>
> (a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
>
> (b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
>
> (c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period * * *;
>
> (d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
>
> (e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

R.C. 2151.414(D)(1)(a)-(e).

**{¶53}** If the trial court makes these statutorily required determinations, a

reviewing court will not reverse a trial court's decision unless it is not supported by

clear and convincing evidence. *In re H.M.K.*, 3d Dist. Wyandot Nos. 16-12-15 and

16-12-16, 2013-Ohio-4317, ¶ 43, citing *In re Meyer*, 98 Ohio App.3d 189, 195 (3d Dist.1994), citing *In re Adoption of Holcomb*, 18 Ohio St.3d 361, 368 (1985) and *In re Adoption of Lay*, 25 Ohio St.3d 41, 42 (1986). *See also In re A.E.*, 3d Dist. Seneca Nos. 13-14-14 and 13-14-15, 2014-Ohio-4540, ¶ 28 ("A court's decision to terminate parental rights will not be overturned as against the manifest weight of the evidence if the record contains competent, credible evidence by which a court can determine by clear and convincing evidence that the essential statutory elements for a termination of parental rights have been established."). "Clear and convincing evidence is that which is sufficient to produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established." *In re S.G.*, 2015-Ohio-2306, at ¶ 10, citing *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

*Analysis*

**{¶54}** In this case, the trial court granted permanent custody of W.J. to the agency after concluding that such a disposition is warranted under R.C. 2151.414(B)(1)(d) along with the parties' stipulation that W.J. "had been in the temporary custody of one or more public children services agencies (SCDSS and LCCS) for twelve or more months of the consecutive twenty-two-month period prior to the filing of the motion for permanent custody."[3] (Doc. No. 174). (*See also*

---

[3] Stephanie alleges that, because the parties stipulated "that the matter would be decided solely upon R.C. 2151.414(B)(1)(d)," "[a]ny analysis done by the trial court under the R.C. 2151.414(B)(1)(a) standard would

May 17, 2021 Tr., Vol. I, at 16-18). Importantly, when assessing Stephanie's compliance with the case plan, the trial court concluded that Stephanie "willfully failed to complete essential components of the reunification plan and that she intends to be reunified with [W.J.] by [William]." (Doc. No. 174).

{¶55} Nevertheless, Stephanie argues that the trial court committed reversible error by erroneously concluding that W.J. was in the temporary custody of the SCDSS and the agency for 12 or more months of a 22-month period under R.C. 2151.414(B)(1)(d) "because her ability to work toward reunification was seriously hampered by the Covid-19 pandemic." (Stephanie's Brief at 13). In other words, Stephanie alleges that because "Ohio was in a Covid-19 state of emergency for approx. [sic] 13 of the months which the trial court used for the 12 in 22 [sic] calculation," the trial court erred by concluding that W.J. was in the temporary custody of one or more public children services agencies for 12 or more months of a consecutive 22-month period. Stephanie's argument is without merit.

{¶56} It is universally known that the Covid-19 pandemic upended our culture's way of doing business and that many "face-to-face services and visits * *

---

be in error as that standard was not before the trial court at the time of the permanent custody hearing." (Stephanie's Brief at 12). However, "a trial court does not err in applying both R.C. 2151.414(B)(1)(a) and (d)." *In re H.D.*, 10th Dist. Franklin No. 13AP-707, 2014-Ohio-228, ¶ 13. Indeed, "[t]he factors contained within R.C. 2151.414(B)(1)(a)-(e) are alternative findings, and only one must be met in order for the first prong of the permanent custody test to be satisfied." *In re S.G.*, 9th Dist. Wayne No. 15AP0005, 2015-Ohio-2306, ¶ 11, citing *In re M.M.*, 9th Dist. Lorain Nos. 10CA009744, 10CA009745, 10CA009746, and 10CA009747, 2010-Ohio-2278, ¶ 12. *See also In re A.M.*, 3d Dist. Marion No. 9-14-46, 2015-Ohio-2740, ¶ 14 ("[T]he findings under R.C. 2151.414(B)(1)(a) and R.C. 2151.414(B)(1)(d) are alternative findings, [and] each is independently sufficient to use as a basis to grant the Agency's motion for permanent custody."), quoting *In re M.R.*, 3d Dist. Defiance No. 4-12-18, 2013-Ohio-1302, ¶ 80.

* were replaced by virtual" visits. *In re A.L.*, 9th Dist. Wayne No. 20AP0047, 2021-Ohio-1982, ¶ 15. It is without question "that virtual visitations with parents' children inherently lack the quality of face-to-face interactions and that participants in virtual visits may be further impeded by their access to the requisite technology and the ability to use it effectively." *Id.* Consequently, "[b]ecause communication restrictions were involuntarily placed on the parents due to the [Covid]-19 pandemic, their parenting ability and desire to reunify with their children should not be measured solely by their use of remote technology." *Id. See also In re K.R.*, 3d Dist. Shelby No. 17-21-12, 2021-Ohio-4474, ¶ 14.

**{¶57}** However, even with the limitations of the Covid-19 pandemic in mind, Stephanie failed to present an argument that those restrictions prevented her from having a meaningful opportunity to work on the case plan for 12 or more months of a consecutive 22-month period. *Accord In re A.L.* at ¶18 ("The parents have failed to demonstrate that [Covid]-19 restrictions prevented them from having a meaningful opportunity to work on the case plan for more than 12 months of a consecutive 22-month period."). *See also In re K.R.* at ¶ 17.

**{¶58}** The record reflects that this case commenced in South Carolina in June 2019—well before the Covid-19 restrictions took effect—and that Stephanie expended minimal effort toward completing the case plan. Significantly, the trial court noted that the GAL determined that Stephanie "expended all of six hours [sic]

effort to achieve reunification with [W.J.]." (Doc. No. 174). Indeed, our review of the record reveals that there is competent, credible evidence that Stephanie "attended an alcohol and drug assessment" but did not follow up with any of the recommendations following the assessment and that she completed on September 10, 2019 a two-hour online parenting class and a 4-hour online anger-management class. (Doc. No. 1); (Mother's Exs. A, B); (May 17, 2021 Tr., Vol. I, at 56-57). Moreover, clear and convincing evidence was presented that Stephanie voluntarily took no action toward satisfying the case plan while the case remained in South Carolina, without any Covid-19 restrictions.

{¶59} Furthermore, the record reflects that, following the transfer of the case to Ohio (to which Stephanie consented), Stephanie never appeared before the trial court until after the motion for permanent custody was filed. Importantly, after the case was transferred to Ohio, Stephanie informed the agency that she did not want to be a part of the case, the case plan, or to be contacted by the agency. Even though Stephanie contacted the agency requesting that she be added to the case plan on September 30, 2020, she quickly asked to be removed from the case plan on November 11, 2020 after making no progress on the plan because, according to Stephanie, William was "close to gaining custody so there [was] no point." (Doc. No. 80).

{¶60} Likewise, clear and convincing evidence was presented supporting the trial court's finding that Stephanie willfully elected not to participate in the case plan on the belief that W.J. would be returned to her once William gained custody of W.J. Significantly, Stephanie testified that she "removed [herself] from the case plan because [she] believed [W.J.] would reunify with [William] faster." (May 18, 2021 Tr., Vol. II, at 326). In addition to removing herself from the case plan because she believed William was close to gaining custody of W.J., Stephanie told the GAL in July 2020 that W.J. "should be returned to [William] immediately so that [William] and [W.J.] could return to South Carolina to be with [her]." (Doc. No. 23).

{¶61} Consequently, clear and convincing evidence exists in the record that Stephanie willfully elected not to participate in the case plan. That is, Stephanie was *not* denied a meaningful opportunity to work on the case plan for 12 or more months of a consecutive 22-month period as a result of Covid-19 restrictions. *See In re K.R.*, 2021-Ohio-4474, at ¶ 17. Therefore, the record supports the trial court's conclusion that, under R.C. 2151.414(B)(1)(d), W.J. was in the temporary custody of SCDSS and the agency for 12 or more months of a consecutive 22-month period. *See In re A.M.*, 3d Dist. Marion No. 9-14-46, 2015-Ohio-2740, ¶ 17.

{¶62} Having resolved that the trial court did not err by concluding that one provision of R.C. 2151.414(B)(1) applies in this case, we next address the trial

court's best-interest determination under R.C. 2151.414(D)(1). Both, Stephanie and William argue that the trial court's decision to sever parental rights is against the manifest weight of the evidence because the record does not reflect competent, credible evidence by which the trial court could conclude that granting permanent custody of W.J. to the agency is in W.J.'s best interest. However, our review of the record reveals competent, credible evidence supporting the trial court's factual findings relevant to the best-interest factors set forth in R.C. 2151.414(D).

{¶63} Regarding the best-interest factor under R.C. 2151.414(D)(1)(a), the trial court considered W.J.'s relationship with his parents and found that "[i]t is not disputed that [W.J.] loves [his] parents." (Doc. No. 174). *Compare In re M.W.*, 10th Dist. Franklin No. 19AP-769, 2020-Ohio-5199, ¶ 24 (noting that "the court recognized the significant relationship between mother and M.W."). However, the trial court acknowledged W.J.'s "concern as to what he perceived as repeated arguments between [his] Parents" and Stephanie's inappropriate conduct during visitations. (Doc. No. 174.) *See In re K.M.*, 3d Dist. Crawford No. 3-18-11, 2018-Ohio-3711, ¶ 26, citing *In re G.F.*, 12th Dist. Butler No. CA2013-12-248, 2014-Ohio-2580, ¶ 15, 25. *See also In re M.W.* at ¶ 24.

{¶64} Nevertheless, "resolution of the first factor is not limited to merely the bond between child and parent." *In re K.R.*, 10th Dist. Franklin No. 18AP-633, 2019-Ohio-2192, ¶ 81. That is, when weighing the evidence under the R.C.

2151.414(D)(1)(a) factor, "[c]ourts have considered the consistency of a party's visitation with a child * * * ." *Id.* at ¶ 82, citing *In re Schaefer*, 111 Ohio St.3d 498, 2006-Ohio-5513, ¶ 59 and *In re S.C.*, 9th Dist. Lorain No. 04CA008469, 2004-Ohio-4570, ¶ 36. Importantly, here, because Stephanie refused to participate in the case plan, the agency requested that there be no contact between her and W.J. Thus, there is competent, credible evidence supporting the trial court's consideration of W.J.'s interaction and interrelationship (at least as to Stephanie) under R.C. 2151.414(D)(1)(a). *Accord id.*

{¶65} Similarly, as to R.C. 2151.414(D)(1)(b)—W.J.'s wishes—the trial court found that (during the May 17, 2021 in camera interview with the trial court, the GAL, and W.J.'s attorney) W.J. expressed a desire to be returned to his parents. Notwithstanding W.J.'s wishes, the GAL recommended that the trial court grant the agency's motion for permanent custody. Here, Stephanie and William assert that W.J.'s wishes should weigh more heavily against granting the agency permanent custody. Nevertheless, W.J.'s wishes, alone, did not require the trial court to deny the agency's motion for permanent custody. *In re K.M.* at ¶ 27, citing *In re S.M.*, 4th Dist. Highland No. 14CA4, 2014-Ohio-2961, ¶ 36. Rather, W.J.'s wishes are "'a factor for the trial court to weigh along with others outlined in R.C. 2151.414(D)(1).'" *Id.*, quoting *In re S.M.* at ¶ 36, citing *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, ¶ 57. *See also In re M.W.* at ¶ 26 (concluding that a trial court

cannot give a child's "wishes under the R.C. 2151.414(D)(1)(b) factor greater weight than the other best interest factors").

{¶66} Moreover, Stephanie contends that the trial court's best-interest determination is against the manifest weight of the evidence because the GAL failed "to observe the interactions between the parents and the minor child" despite his recommendation to permanently sever custody. (Stephanie's Brief at 18). However, just as a child's wishes are a factor for the trial court to weigh, the GAL's recommendation is just another factor for the trial court to include in its analysis. *See Merriman v. Merriman*, 3d Dist. Paulding No. 11-15-10, 2016-Ohio-3385, ¶ 19 ("'"[A] trial court is not bound to follow a guardian ad litem's recommendation."'"), quoting *Bomberger-Cronin v. Cronin*, 2d Dist. Greene, No.2014-CA-4, 2014-Ohio-2302, ¶ 27, quoting *Lumley v. Lumley*, 10th Dist. Franklin No. 09AP-556, 2009-Ohio-6992, ¶ 46. *See also In re M.W.* at ¶ 28, citing *In re J.W.*, 10th Dist. Franklin No. 19AP-122, 2019-Ohio-4775, ¶ 29. In other words, whether the GAL observed the interactions with the parents before issuing his report to the trial court is a matter of credibility for the trial court to assess when considering its best-interest analysis. *See Merriman* at ¶ 19 ("'"As the fact finder, the trial court determines the guardian ad litem's credibility and the weight to be given to the guardian ad litem's recommendation."'"), quoting *Bomberger-Cronin* at ¶ 27, quoting *Lumley* at ¶ 46. Consequently, because the "'"assessment of the credibility and weight of the

evidence is reserved for the trial court, we will not second guess the court's"""" decision to accept or reject the GAL's recommendation. *Id.*, quoting *Bomberger-Cronin* at ¶ 27, quoting *Lumley* at ¶ 46.

{¶67} Concerning R.C. 2151.414(D)(1)(c)—W.J.'s custodial history—the trial court found that W.J. had been "in the custody of either SCDSS or [the agency] since June 17, 2019, a period * * * of over two years" and that "[a]ll together [W.J.] [had] been in the custody of childcare agencies for approximately three years." (Doc. No. 174). Stephanie alleges that this factor did not weigh in favor of granting the agency's motion for permanent custody because "the removal of [W.J.] from the jurisdiction in which she lived prevented her from having an opportunity to meaningfully work a case plan." (Stephanie's Brief at 19). William alleges that this factor did not weigh in favor of granting the agency's motion for permanent custody because "[t]he trial court failed to provide any weight to the fact that the [Covid-19] pandemic has negatively impacted the interactions of the family with [W.J.] or with potential services." (William's Brief at 13).

{¶68} Importantly, "R.C. 2151.414(D)(1)(c) permits a court to review the broader custodial history of the child." *In re M.W.* at ¶ 30, citing *In re S.H.*, 12th Dist. Butler No. CA2020-02-023, 2020-Ohio-3499, ¶ 33 (noting the "plain language of R.C. 2151.414(D)(1)(c) instructs the court to consider, generally, the custodial history of the child") and *In re Ca.T.*, 8th Dist. Cuyahoga No. 108969, 2020-Ohio-

579, ¶ 35. "While the trial court may consider additional facts beyond the 12-out-of-22 circumstance in its analysis under R.C. 2151.414(D)(1)(c), the court is under no obligation to do so." *Id.*, citing *In re T.M.*, 10th Dist. Franklin No. 18AP-943, 2020-Ohio-815, ¶ 19 (rejecting the contention that a trial court must take other facts beyond the 12-out-of-22 finding into consideration when considering custodial history under R.C. 2151.414(D)(1)(c)).

**{¶69}** Based on our review of the record, the trial court's conclusion that W.J.'s custodial history weighs in favor of granting the agency's motion for permanent custody is supported by competent, credible evidence. Prior to this case, W.J. was in the temporary custody of Licking County Job and Family Services ("Licking County JFS") from July 6, 2016 until July 29, 2017 following Stephanie's arrest for operating a motor vehicle while under the influence of alcohol or drugs of abuse and child endangering (because W.J. "was in the car with his mother at the time of arrest"). (Doc. No. 174). When temporary custody of W.J. was granted to Licking County JFS, William "was in prison." (*Id.*).

**{¶70}** Furthermore, the trial court found that William was arrested on February 7, 2021 "for traffic and criminal offenses," including two felony offenses. (*Id.*). In other words, because there was a possibility that William would again be incarcerated, W.J.'s period of temporary custody would have continued past the date of the permanent-custody hearing. *Compare In re K.M.*, 2018-Ohio-3711, at ¶ 28

("In addition, given that Lively was incarcerated at the time of the permanent-custody hearing and that she was going to either remain in jail or be sent to a rehabilitation facility, K.M.'s and D.M.'s period of temporary custody would have continued past the date of the permanent-custody hearing."). *See also In re M.W.* at ¶ 32.

{¶**71**} As to R.C. 2151.414(D)(1)(d)—W.J.'s need for a legally secure permanent placement and whether that type of placement could be achieved without a grant of permanent custody to the agency—there is competent, credible evidence in the record supporting the trial court's finding that granting permanent custody to the agency was the only effective means of providing W.J. with a legally secure permanent placement. "'A legally secure permanent placement is more than a house with four walls. Rather, it generally encompasses a stable environment where a child will live in safety with one or more dependable adults who will provide for the child's needs.'" *In re K.M.* at ¶ 29, quoting *In re M.B.*, 4th Dist. Highland No. 15CA19, 2016-Ohio-793, ¶ 56. Thus, Stephanie's argument that this best-interest factor weighs against granting the agency's motion for permanent custody simply because "she has stable housing in South Carolina, and a stable income" is not competent, credible evidence that a legally secure placement could be achieved without a grant of permanent custody to the agency.

{¶72} Similarly, William alleges that the evidence that he "substantially completed the case plan in this case" and maintains housing and income weighs against granting the agency's motion for permeant custody. (William's Brief at 14). However, it is generally accepted that a trial court is not limited to considering only current compliance with case plan objectives or objectives related to housing and income in its analysis of the child's need for a legally secure permanent placement. *See In re M.W.* at ¶ 40; *In re T.A.*, 10th Dist. Franklin No. 18AP-943, 2020-Ohio-815, ¶ 29. *See also In re W.C.J.*, 4th Dist. Jackson No. 14CA3, 2014-Ohio-5841, ¶ 46 ("Substantial compliance with a case plan is not necessarily dispositive on the issue of reunification and does not preclude a grant of permanent custody to a children's services agency."). Importantly, the trial court highlighted the focal point of this case in its resolution of this issue. Specifically, the trial court concluded "that, regardless of any court order to the contrary, if [William] were to again be granted sole custody of [W.J.], he would reunite [W.J.] and himself with [Stephanie] and leave [W.J.] with [Stephanie] when [William] works out of state [and] [William] may again go to prison." (Doc. No. 174).

{¶73} Indeed, the record demonstrates that William (the proposed alternative to permanent custody in this case) could not provide W.J. a legally secure permanent placement. Specifically, the trial court found that returning W.J. to William's custody and care is untenable because it would result in W.J. being exposed to

Stephanie's conduct which caused him to be removed from Stephanie's care on the prior occasions. *See In re G.J.*, 3d Dist. Crawford Nos. 3-21-01, 3-21-02, and 3-21-03, 2021-Ohio-3786, ¶ 28, citing *In re K.M.* at ¶ 36. And, through her lack of commitment to the case plan, Stephanie failed to demonstrate the ability to provide a permanent placement for W.J. *See In re C.H.*, 3d Dist. Union No. 14-21-20, 2022-Ohio-1139, ¶ 56 (finding that "through her lack of commitment to the case plan, Mother has failed to demonstrate that she has the ability to provide a permanent placement for the child"). In other words, the relationship between William and Stephanie "severely limited the trial court's ability to attach significant weight to [William's] past positive efforts." *In re T.A.* at ¶ 29. Consequently, the trial court's conclusion that W.J. is in need of a legally secure permanent placement and that type of placement cannot be achieved without granting the agency's motion for permanent custody is not against the manifest weight of the evidence.

{¶74} Finally, with respect to R.C. 2151.414(D)(1)(e)—whether any of the factors in R.C. 2151.414(E)(7)-(11) apply—William contends that the trial court erred by considering these factors because the "agency stated to the court that they were not alleging any of the additional factors contained in [R.C.] 2151.414(E)(7)-(11)." (William's Brief at 15). Stephanie, on the other hand, argues that the record does not support the trial court's conclusion that she "twice placed [W.J.] at substantial risk of harm after consuming alcohol." (Stephanie's Brief at 19). Even

though the trial court addressed whether any of the factors in R.C. 2151.414(E)(7)-(11) apply in this case—namely, R.C. 251.414(E)(9)—the trial court ultimately concluded that there is insufficient evidence in the record for it to conclude that any of those factors are applicable to this case. Therefore, Stephanie's and William's arguments are without merit.

{¶75} "Nevertheless, a trial court can award permanent custody to the state even in the absence of clear and convincing evidence as to one of the R.C. 2151.414(D)(1) factors." *In re K.M.* at ¶ 37, citing *In re H.M.*, 3d Dist. Logan Nos. 8-13-11, 8-13-12, and 8-13-13, 2014-Ohio-755, ¶ 28 ("A trial court can determine that granting permanent custody to the state is in the child's best interest, even with a lack of clear and convincing evidence in a single factor."). Based on the totality of the evidence, we conclude that the trial court's conclusion that it is in W.J.'s best interest to grant the agency's motion for permanent custody is supported by clear and convincing evidence.

{¶76} Nevertheless, in his third assignment of error, William alleges that the trial court erred by considering whether permanent custody is in the best interest of W.J. under R.C. 2151.414(D)(2). However, "[b]ecause R.C. 2151.414(D)(1) and (2) 'are alternative means for reaching the best-interest determination,' our conclusion that the juvenile court did not err in its permanent custody determination pursuant to R.C. 2151.414(D)(1) obviates any significance to [William's] argument

regarding application of R.C. 2151.414(D)(2)." *In re S.C.*, 2022-Ohio-356, quoting *In re J.P.*, 2019-Ohio-1619, at ¶ 40. *See also In re N.M.*, 10th Dist. Franklin No. 20AP-158, 2021-Ohio-2080, ¶ 63.

**{¶77}** Furthermore, Stephanie argues in her fourth assignment of error that the trial court committed reversible error by permitting the South Carolina caseworkers to testify virtually through the use of WebEx technology. Specifically, Stephanie contends that she "was not able to properly present nor defend her own case when the testimony of the opposing party was presented via webex, and there were apparent problems and difficulty with the connection, including breaking up and garbled testimony from the witnesses and an unclear transcript of the proceedings." (Stephanie's Brief at 17).

**{¶78}** "'Trial courts have broad discretion in deciding whether to admit evidence.'" *In re C.H.*, 2022-Ohio-1139, at ¶ 60, quoting *In re Za.C.*, 3d Dist. Allen Nos. 1-13-43 and 1-13-44, 2014-Ohio-979, ¶ 35. Consequently, this court will uphold a trial court's decision to admit or exclude evidence absent an abuse of discretion. *Id.* "Once again, an abuse of discretion suggest the trial court's decision is unreasonable, arbitrary, or unconscionable. *Blakemore*, 5 Ohio St.3d at 219.

**{¶79}** Civ.R. 43(A) provides that "the witnesses' testimony shall be taken in open court unless a statute, the Rules of Evidence, these rules, or other rules adopted by the Supreme Court provide otherwise." The version of the rule in effect at the

time of trial further provides that, "[f]or good cause in compelling circumstances and with appropriate safeguards, the court may permit testimony in open court by contemporaneous transmission from a different location." Civ.R. 43(A).

{¶80} As an initial matter, the record reflects that Stephanie did not object to the South Carolina caseworkers providing testimony by contemporaneous transmission from a different location. "A party's failure to object forfeits review for all but plain error, which appellate courts will invoke when the error is of such seriousness that it affects 'the basic fairness, integrity, or public reputation of the judicial process.'" *In re I.W.*, 1st Dist. Hamilton No. C-180095, 2019-Ohio-1515, ¶ 14, quoting *McNeil v. Kingsley*, 178 Ohio App.3d 674, 2008-Ohio-5536, ¶ 24 (3d Dist.). "However, invocation of the plain-error doctrine in civil cases is rare and is only employed by the court in instances in which 'the error complained of "would have a material adverse [e]ffect on the character and public confidence in judicial proceedings."'" *Id.*, quoting *Reichert v. Ingersoll*, 18 Ohio St.3d 220, 223 (1985), quoting *Schade v. Carnegie Body Co.*, 70 Ohio St.2d 207, 209 (1982). Indeed, the "use of this doctrine 'is to be taken with utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.'" *In re C.N.*, 2d Dist. Montgomery No. 27119, 2016-Ohio-7322, ¶ 55, quoting *Reichert* at 223.

{¶81} This case does not present exceptional circumstances which would require reversal to prevent a manifest miscarriage of justice. Contrary to

Stephanie's argument that she was unable to present or defend her case because the testimony of the caseworkers was "garbled" or unclear, Stephanie had the opportunity to cross-examine the caseworkers and the trial court clarified any testimony that appeared unclear. Furthermore, there is no evidence in the record that the trial court failed to institute the "appropriate safeguards" required by the rule. *See Jennings v. Bradley*, 419 Fed.Appx. 594, 598 (6th Cir.2011). That is, in addition to Stephanie being afforded the opportunity to cross-examine the witnesses, the trier of fact was able to listen to the witnesses and observe their demeanor and the transmission of their testimony was instantaneous. *See id.* Consequently, it was not error, let alone plain error for the trial court to permit the South Carolina caseworkers to testify by contemporaneous transmission from a different location.

{¶82} For the reasons above, we conclude that the trial court's decision to grant permanent custody of W.J. to the agency is not against the manifest weight of the evidence. Consequently, the trial court did not err by granting the agency's motion for permanent custody.

{¶83} For these reasons, Stephanie's first, fourth, and fifth assignments of error and all of William's assignments of error are overruled.

### Mother's Assignment of Error No. VI

**The Trial Court's Decision Was Against the Manifest Weight of the Evidence Because the Evidence Tno [sic] Support a Reasonable Efforts Finding.**

{¶84} In her sixth assignment of error, Stephanie argues that the agency failed to make reasonable efforts to reunify W.J. and Stephanie. Specifically, Stephanie argues that the agency failed to make reasonable efforts to (1) "supervise visitation for many months during the course of the case"; (2) "file for case services until October of 2020"; and (3) "inform [Stephanie] that in the event [William] regained custody he would not be able to again live with her based upon her failure to complete the case plan." (Stephanie's Brief at 20).

*Standard of Review*

{¶85} "We review under an abuse-of-discretion standard a trial court's finding that an agency made reasonable efforts toward reunification." *In re A.M.*, 2015-Ohio-2740, at ¶ 24. As we previously stated, an abuse of discretion suggests the trial court's decision is unreasonable, arbitrary, or unconscionable. *Blakemore*, 5 Ohio St.3d at 219.

*Analysis*

{¶86} "'Reasonable efforts' has been defined as the state's efforts, after intervening to protect a child's health or safety, to resolve the threat to the child before removing the child from the home or to return the child to the home after the threat is removed." *In re I.H.*, 6th Dist. Lucas No. L-20-1062, 2020-Ohio-4853, ¶ 23, citing *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, at ¶ 28. However,

> [n]o one section of the Revised Code addresses the concept of reasonable efforts. Overall, Ohio's child-welfare laws are designed

to care for and protect children, "whenever possible, in a family environment, separating the child from the child's parents only when necessary for the child's welfare or in the interests of public safety." R.C. 2151.01(A). To that end, various sections of the Revised Code refer to the agency's duty to make reasonable efforts to preserve or reunify the family unit.

*In re C.F.* at ¶ 29. In particular, under R.C. 2151.419, when a trial court

removes a child from the child's home or continues the removal of a child from the child's home, the court shall determine whether the public children services agency * * * has made reasonable efforts to prevent the removal of the child from the child's home, to eliminate the continued removal of the child from the child's home, or to make it possible for the child to return safely home.

R.C. 2151.419(A)(1). The Supreme Court of Ohio

determined that the trial court is not obligated, under R.C. 2151.419, to make a determination that the agency used reasonable efforts to reunify the family at the time of the permanent custody hearing *unless* the agency has not established that reasonable efforts have been made prior to the hearing.

(Emphasis sic.) *In re N.R.S.*, 3d Dist. Crawford Nos. 3-17-07, 3-17-08, and 3-17-09, 2018-Ohio-125, ¶ 25, citing *In re C.F.* at ¶ 41, 43 (concluding that the reasonable-efforts determination under R.C. 2151.419 does not apply to permanent-custody motions under R.C. 2151.413 or to hearings on such motions under R.C. 2151.414).

According to the Ohio Supreme Court, the trial court is only obligated to make a determination that the agency has made reasonable efforts to reunify the family at "adjudicatory, emergency, detention, and temporary-disposition hearings, and dispositional hearings for abused, neglected, or dependent children, all of which occur prior to a decision transferring permanent custody to the state."

-45-

*In re B.S.*, 3d Dist. Allen No. 1-15-44, 2015-Ohio-4805, ¶ 36, quoting *In re C.F.* at ¶ 41.

**{¶87}** In this case, the South Carolina Family Court made its reasonable-efforts finding prior to the case being transferred to Ohio and the trial court made its reasonable-efforts finding under R.C. 2151.419 during the dispositional hearing on February 19, 2021. Consequently, the trial court was not required to make any further reasonable-efforts findings. *Accord In re B.J.P.*, 3d Dist. Wyandot No. 16-18-04, 2018-Ohio-5221, ¶ 18. "Stated another way, because the trial court previously made the requisite R.C. 2151.419 'reasonable efforts' findings, it was not required to again make that finding at the hearing on the agency's motion for permanent custody filed under R.C. 2151.413." *Id.*, citing *In re C.F.* at ¶ 43.

**{¶88}** Specifically, the trial court concluded that the agency made reasonable efforts to eliminate the continued removal of W.J. from his home because the agency "referred the Parents to the appropriate service providers to help alleviate the concerns which led to the removal of [W.J.] from the home" but that "the original safety concerns have not yet been alleviated." (Doc. No. 103). Nevertheless, Stephanie contends that the trial court abused its discretion by concluding that the agency made reasonable efforts toward reunification.

**{¶89}** Stephanie's arguments in support of this assignment of error are problematic. First, Stephanie contends that the agency failed to make reasonable

efforts to "supervise visitation for many months during the course of the case." (Stephanie's Brief at 20). Stephanie provides no legal or factual support as to how this alleged failure establishes that the agency failed to make reasonable efforts toward reunification. Rather, in conjunction with her remaining arguments—that the agency failed to make reasonable efforts to file for case services until October 2020 or inform her that she would not be able to reunify with W.J. through William—our review of the record reveals that the agency's reunification efforts were reasonable and diligent under the circumstances.

{¶90} """"Case plans are the tools that child protective service agencies use to facilitate the reunification of families who * * * have been temporarily separated.""" *In re A.M.*, 2015-Ohio-2740, at ¶ 25, quoting *In re T.S.*, 3d Dist. Mercer Nos. 10-14-13, 10-14-14, and 10-14-15, 2015-Ohio-1184, ¶ 26, quoting *In re Evans*, 3d Dist. Allen No. 1-01-75, 2001 WL 1333979, *3 (Oct. 30, 2001). "'To that end, case plans establish individualized concerns and goals, along with the steps that the parties and the agency can take to achieve reunification.'" *Id.*, quoting *In re T.S.* at ¶ 27, citing *In re Evans* at *3. "'Agencies have an affirmative duty to diligently pursue efforts to achieve the goals in the case plan.'" *Id.*, quoting *In re T.S.* at ¶ 27, citing *In re Evans* at *3. """"Nevertheless, the issue is not whether there was anything more that [the agency] could have done, but whether the [agency's] case planning and efforts were reasonable and diligent under the circumstances of

this case.'"'" *Id.*, quoting *In re T.S.* at ¶ 27, quoting *In re Leveck*, 2003-Ohio-1269, at ¶ 10. "'"Reasonable efforts" does not mean all available efforts. Otherwise, there would always be an argument that one more additional service, no matter how remote, may have made reunification possible.'" *In re H.M.K.*, 2013-Ohio-4317, at ¶ 95, quoting *In re M.A.P.*, 12th Dist. Butler Nos. CA2012-08-164 and CA2012-08-165, 2013-Ohio-655, ¶ 47. "'We also note that the statute provides that in determining whether reasonable efforts were made, the child's health and safety is paramount.'" *In re A.M.* at ¶ 25, quoting *In re T.S.* at ¶ 27, citing R.C. 2151.419(A)(1).

{¶91} Importantly, the record reflects that the agency attempted to assist Stephanie; however, the record unequivocally reflects that Stephanie refused any such assistance. Indeed, the record reflects that (for nearly three months following the transfer of the case to Ohio) Stephanie informed the agency that she did not want to be a part of the case, the case plan, or to be contacted by the agency. When Stephanie contacted the agency on September 30, 2020 requesting to be added to the case plan, the record reflects that the agency added her to the case plan and began arranging services for her with providers in South Carolina. Nevertheless, Stephanie contacted the agency on November 11, 2020 requesting to be removed from the case plan having made no progress toward its objectives. Moreover, Stephanie showed no interest in the case—including reunifying with W.J.—until

the agency filed its motion for permanent custody on March 12, 2021. Thus, based on the record before us, Stephanie has not demonstrated that the trial court abused its discretion by determining that the agency made reasonable efforts toward reunification. *Accord In re B.S.*, 2015-Ohio-4805, at ¶ 40.

{¶92} Therefore, Stephanie's sixth assignment of error is overruled.

### Mother's Assignment of Error No. VII

### Appellant's Trial Counsel Was Ineffective Denying Appellant of Her Right to Counsel.

{¶93} In her seventh assignment of error, Stephanie argues that her trial counsel was ineffective. Specifically, Stephanie asserts that her trial counsel was ineffective for failing to object to the jurisdiction of the trial court and by stipulating that W.J. had been in the temporary custody of one or more public children services agencies for 12 or more months of a consecutive 22-month period.

*Standard of Review*

{¶94} "'In permanent custody proceedings, where parents face losing their children, we apply the same test as the test for ineffective assistance of counsel in criminal cases.'" *In re V.G.*, 3d Dist. Logan No. 8-20-57, 2021-Ohio-3554, ¶ 62, quoting *In re E.C.*, 3d Dist. Hancock No. 5-15-01, 2015-Ohio-2211, ¶ 40. Therefore, a petitioner asserting a claim of ineffective assistance of counsel must establish: (1) the counsel's performance was deficient or unreasonable under the circumstances; and (2) the deficient performance prejudiced the petitioner. *State v.*

*Kole*, 92 Ohio St.3d 303, 306 (2001), citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052 (1984). *See also In re V.G.* at ¶ 62. In order to show counsel's conduct was deficient or unreasonable, the petitioner must overcome the presumption that counsel provided competent representation and must show that counsel's actions were not trial strategies prompted by reasonable professional judgment. *Strickland* at 687.

**{¶95}** "Prejudice results when '"there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."'" *In re V.G.* at ¶ 63, quoting *Bradley* at 142, quoting *Strickland* at 694. "'"A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Id.*, quoting *Bradley* at 142, quoting *Strickland* at 694.

*Analysis*

**{¶96}** Based on our conclusion in Stephanie's first and second assignments of error, Stephanie's argument in her seventh assignment of error that her trial counsel was ineffective for failing to object to the jurisdiction of the trial court and by stipulating that W.J. had been in the temporary custody of one or more public children services agencies for 12 or more months of a consecutive 22-month period is without merit.

**{¶97}** Accordingly, Stephanie's seventh assignment of error is overruled.

{¶98} Having found no error prejudicial to the appellants herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**SHAW and WILLAMOWSKI, J.J., concur.**

**/jlr**